## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

MICHAEL RUBIN,                                              )
1625 East 10th Street                                      )
Brooklyn, NY 11223                                         )
                                                           )    Case No. _____
        Plaintiff,                                )
                                                           )    JURY TRIAL DEMANDED
v.                                                         )
                                                           )
HAMILTON BANCORP, INC.,                                    )
c/o CSC-Lawyers Incorporating Service Company              )
7 St. Paul Street, Suite 820                               )
Baltimore, MD 21202                                        )
                                                           )
ROBERT A. DEALMEIDA,                                       )
c/o Hamilton Bancorp, Inc.                                 )
501 Fairmount Avenue, Suite 200                            )
Towson, MD 21286                                           )
                                                           )
BOBBI R. MACDONALD,                                        )
c/o Hamilton Bancorp, Inc.                                 )
501 Fairmount Avenue, Suite 200                            )
Towson, MD 21286                                           )
                                                           )
JAMES R. FARNUM, JR.                                       )
c/o Hamilton Bancorp, Inc.                                 )
501 Fairmount Avenue, Suite 200                            )
Towson, MD 21286                                           )
                                                           )
WILLIAM E. BALLARD,                                        )
c/o Hamilton Bancorp, Inc.                                 )
501 Fairmount Avenue, Suite 200                            )
Towson, MD 21286                                           )
                                                           )
CAROL L. COUGHLIN,                                         )
c/o Hamilton Bancorp, Inc.                                 )
501 Fairmount Avenue, Suite 200                            )
Towson, MD 21286                                           )
                                                           )
JOSEPH J. BOUFFARD,                                        )
c/o Hamilton Bancorp, Inc.                                 )
501 Fairmount Avenue, Suite 200                            )
Towson, MD 21286                                           )

1

|  |  |
|---|---|
| WILLIAM W. FURR, | ) |
| c/o Hamilton Bancorp, Inc. | ) |
| 501 Fairmount Avenue, Suite 200 | ) |
| Towson, MD 21286. | ) |
|  | ) |
| and | ) |
|  | ) |
| JENNY G. MORGAN, | ) |
| c/o Hamilton Bancorp, Inc. | ) |
| 501 Fairmount Avenue, Suite 200 | ) |
| Towson, MD 21286 | ) |
|  | ) |
|  | ) |
|                Defendants. | ) |

## COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

Plaintiff Michael Rubin ("Plaintiff"), by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.     Plaintiff brings this action against Hamilton Bancorp, Inc. ("Hamilton" or the "Company") and the members of its Board of Directors (the "Board" or the "Individual Defendants"), for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which Hamilton will be acquired by Orrstown Financial Services, Inc. ("Orrstown") (the "Proposed Transaction").

2.     On October 23, 2018, Hamilton and Orrstown issued a joint press release announcing they had entered into an Agreement and Plan of Merger dated October 23, 2018

("Merger Agreement").  Pursuant to the terms of the Merger Agreement, each share of Hamilton common stock will be converted into the right to receive (i) 0.54 shares of Orrstown common stock, and (ii) $4.10 in cash (the "Merger Consideration").  Based on the closing price of Orrstown common stock of $18.96 per share on February 4, 2019, the implied value of the Merger Consideration is $14.34 per share.  The Proposed Transaction is valued at approximately $58.5 million.

3.      On January 9, 2019, Hamilton and Orrstown filed a joint proxy statement/prospectus on Form S-4 (as amended on February 6, 2019, the "Registration Statement") with the SEC in connection with the Proposed Transaction.  The Registration Statement, which recommends that Hamilton stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) Hamilton and Orrstown management's financial projections, including financial projections that were relied upon by the Company's financial advisor, Keefe, Bruyette & Woods, Inc. ("KBW"), in its financial analyses, all of which are ***wholly omitted*** from the Registration Statement; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by KBW; (iii) the background process leading to the Proposed Transaction; and (iv) Company insiders' potential conflicts of interest.  The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as Hamilton stockholders need such information in order to cast a fully-informed vote in connection with the Proposed Transaction.

4.      In short, unless remedied, Hamilton's public stockholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information concerning the Proposed Transaction being provided to them.  Plaintiff seeks to enjoin the

stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6.     This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.     Venue is proper under 28 U.S.C. § 1391 as well as under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, because the conduct at issue had an effect in this District; and the Company is incorporated in this District.

## PARTIES

8.     Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Hamilton.

9.     Hamilton, a Maryland chartered corporation, serves as the stock holding company for Hamilton Bank (the "Bank"), a state chartered commercial bank.  The Company's common stock is traded on the NASDAQ Capital Market under the ticker symbol "HBK."

10.     Defendant Robert A. DeAlmeida ("DeAlmeida") is President and Chief Executive Officer ("CEO") of the Company and the Bank and has served as a director of the Company and the Bank since 2005.  Defendant DeAlmeida previously served as Chief Financial Officer

("CFO") of the Bank.

11.    Defendant Bobbi R. Macdonald ("Macdonald") has been a director of the Company and the Bank since 2008.

12.    Defendant James R. Farnum, Jr. ("Farnum") has been a director of the Company and the Bank since 2013.

13.    Defendant William E. Ballard ("Ballard") has been a director of the Company and the Bank since 2010.

14.    Defendant Carol L. Coughlin ("Coughlin") has been a director of the Company and the Bank since 2010 and Chairwoman of the board of directors of the Bank since January 2015.

15.    Defendant Joseph J. Bouffard ("Bouffard") has been a director of the Company and the Bank since January 2015.

16.    Defendant William W. Furr ("Furr") has been a director of the Company and the Bank since 1977.

17.    Defendant Jenny G. Morgan ("Morgan") has been a director of the Company and the Bank since January 2016.

18.    Defendants referenced in paragraphs 10 to 17 are collectively referred to herein as the "Board" or the "Individual Defendants."

**OTHER RELEVANT ENTITIES**

19.    Orrstown, a Pennsylvania corporation, is the holding company for its wholly-owned subsidiaries Orrstown Bank and Wheatland Advisors, Inc.   Orrstown's principal executive offices are located at 77 East King Street, Shippensburg, Pennsylvania 17257.

Orrstown's common stock is traded on the NASDAQ Capital Market under the ticker symbol "ORRF."

## SUBSTANTIVE ALLEGATIONS

### Company Background

20.     Hamilton is a Maryland chartered corporation that serves as the stock holding company for the Bank.  On October 10, 2012, the Bank converted from a mutual savings bank to a stock savings bank and became a wholly owned subsidiary of the Company.  On December 21, 2017, the Bank converted its charter from a federal savings bank to a Maryland state-chartered commercial bank.  In connection with the conversion, the Company sold 3,703,000 shares of common stock at a price of $10.00 per share, through which the Company received net proceeds of approximately $35,580,000.   In conjunction with the Bank's charter conversion, Hamilton converted from a savings and loan holding company to a bank holding company.  Hamilton's principal business activity is the ownership of the Bank's capital stock and the management of the offering proceeds it retained in connection with the Bank's conversion.

21.     The Bank is a community-oriented financial institution with a lending market area in greater Maryland, southern Pennsylvania, Washington D.C., and northern Virginia.  The Bank offers a variety of deposit and loan products including real estate loans, including one-to-four family mortgage loans, commercial real estate loans, home equity loans and lines of credit.  The Bank also offers commercial term, leases and line of credit loans along with consumer loans consisting primarily of automobile loans, recreational vehicles and loans secured by deposits.

22.     In an effort to expand the Bank's product offering in its market area, on May 13, 2016, the Company completed the acquisition of Fraternity Community Bancorp, Inc. for approximately $25.7 million.  Similarly on September 11, 2015, the Company completed its

acquisition of Fairmount Bancorp, Inc. for approximately $15.4 million.  As a result of these acquisitions, Hamilton added three branches to its branch structure in the Baltimore, Maryland area.

23.     On October 31, 2018, Hamilton announced its financial results for the second quarter of fiscal 2019.  For the quarter, net income increased to $665 thousand, or $0.21 per common share, compared to net income of $411 thousand, or $0.13 per common share, in the second quarter of fiscal 2018.  Return on average assets and equity increased to 0.52% and 4.74%, respectively, compared to 0.32% and 2.68%, respectively, in the second quarter of fiscal 2018.

**The Sale Process**

24.     At a January 16, 2018 Board meeting, the Board established a Strategic Committee (the "Strategic Committee") to assist the Board in exploring a possible merger transaction.

25.     At a February 2, 2018 Strategic Committee meeting, KBW reviewed with the Strategic Committee several possible merger partners, which included financial institutions that had previously expressed an interest in, and others that might have an interest in, a merger transaction with Hamilton.  The Strategic Committee also discussed and approved the engagement of KBW to act as financial advisor to Hamilton in connection with a possible merger transaction and solicitation process.

26.     Beginning in May 2018, KBW contacted 11 potential merger partners approved by the Board.  A virtual data room was opened at such time to those parties who entered into a non-disclosure agreement ("NDA") and expressed an interest in receiving additional information regarding a transaction with Hamilton.  Interested potential partners were asked to

provide preliminary non-binding indications of interest by July 16, 2018. The Registration Statement fails to disclose the specific terms of the NDAs and whether the NDAs contained "don't ask, don't waive" ("DADW") provisions that would prevent the counter-parties executing the NDAs from making a topping bid for the Company if Hamilton entered into a merger with another party.

27.     In addition to the 11 parties solicited by KBW, an additional party contacted KBW directly through a financial advisor on July 3, 2018 expressing an interest in participating in the process. The Board approved KBW providing this party with a NDA and access to the virtual data room. The Registration Statement fails to disclose the terms of this party's NDA and whether it contained a DADW provision.

28.     On July 21, 2018, the Board met and KBW updated the Board on the results of the solicitation of interest in a merger transaction. Of the 12 institutions which had been contacted by, or which had contacted, KBW, eight were granted access to the virtual data room containing a confidential information memorandum concerning Hamilton (the "Confidential Memorandum") and two of these financial institutions, Orrstown and a company identified in the Registration Statement as "Company A," had submitted written non-binding indications of interest. One additional financial institution had expressed a verbal interest, but did not submit a written non-binding indication of interest and was not invited to conduct additional due diligence.

29.     Orrstown's indication of interest included merger consideration of between $16.50 and $17.50 per share of Hamilton common stock, payable in a mix of stock and cash. Company A's indication of interest included merger consideration of $16.12 per share of

Hamilton common stock, payable 85% in stock and 15% in cash.  Orrstown and Company A were invited to submit final indications of interest by August 16, 2018.

30.      The Board met on August 20, 2018 to consider the revised indications of interest submitted by Orrstown and Company A.  Orrstown's revised indication of interest included merger consideration of $17.50 per share of Hamilton common stock, payable in up to 80% in stock and 20% in cash and subject to a fixed exchange ratio which would be set upon a mutually agreed upon methodology prior to the execution of a definitive agreement.  Company A's revised indication of interest included merger consideration of $17.02 per share of Hamilton common stock, payable 85% in stock and 15% in cash and subject to a fixed exchange ratio that would be based upon a 10-day average price for Company A's common stock prior to the signing of a definitive agreement.  That same day, Company A's financial advisor expressed to KBW an ability for Company A to further increase its indication of interest to $17.10 per share. The Board decided to move forward with a merger transaction with Orrstown and accepted and executed the Orrstown indication of interest on August 27, 2018, which included an exclusivity period expiring on October 11, 2018.

31.      Thereafter, on September 19, 2018, Orrstown's financial advisor called KBW to propose fixing the exchange ratio at that point as a result of declines in the market price for Orrstown common stock after submission of the indication of interest on August 16, 2018. Orrstown proposed that the merger consideration be set at $3.50 in cash and 0.5500 shares of Orrstown common stock for each share of Hamilton common stock.  Based on the closing price of Orrstown common stock of $23.65 per share on September 19, 2018, the implied merger consideration to Hamilton's stockholders as of that day would have been $16.74 per share.

32.     On September 20, 2018, the Board met and instructed KBW to make a counter proposal on September 21, 2018 for increased merger consideration, either by increasing the stock portion of the consideration or by increasing the cash portion, based upon the preference of Orrstown.   Based on the closing price of Orrstown common stock of $24.05 per share on September 20, 2018, the approximate value of the merger consideration requested by the Board through an increase in either cash or stock consideration was $17.21 per share of Hamilton common stock.

33.     On September 28, 2018, Orrstown proposed revised merger consideration of $4.10 in cash and 0.5400 shares of Orrstown common stock, per share of Hamilton common stock.   Based on the closing price of Orrstown common stock of $23.80 per share on September 29, 2018 (when the Board considered the offer), the implied merger consideration to Hamilton's stockholders as of that day would have been $16.95 per share of Hamilton stock.

34.     On September 29, 2018, the Board determined to accept the revised offer of $4.10 in cash and 0.5400 shares of Orrstown common stock per share of Hamilton common stock.

35.     After further negotiations regarding the terms of the Merger Agreement, on October 23, 2018, the Board met, KBW delivered its fairness opinion and the Board voted to adopt and approve the Merger Agreement.

36.     That same day, Hamilton and Orrstown executed the Merger Agreement and, together with Orrstown, issued a joint press release announcing the Proposed Transaction.

**The Proposed Transaction**

37.     On October 23, 2018,   Hamilton and Orrstown issued a joint press release announcing the Proposed Transaction, which stated in relevant part:

SHIPPENSBURG, PA—October 23, 2018 (GLOBE NEWSWIRE) — Orrstown Financial Services, Inc. (NASDAQ: ORRF) ("Orrstown") and Hamilton Bancorp,

Inc. (NASDAQ: HBK) ("Hamilton") today announced the signing of a definitive agreement under which Hamilton will merge with and into Orrstown. Hamilton shareholders will receive a combination of stock and cash currently valued at $58.5 million.

Under the terms of the agreement, Hamilton shareholders will receive 0.54 shares of Orrstown common stock and $4.10 per share in cash for each share of Hamilton common stock owned by them. The cash consideration is subject to reduction based on potential losses, write-downs, or reserves related to certain identified loans. The transaction is intended to qualify as a tax-free reorganization for federal income tax purposes.

The combination is expected to create significant value for both Orrstown and Hamilton shareholders. Including the impact of merger-related benefits and charges, the transaction is projected to result in earnings per share accretion of approximately 8% in 2020, with an internal rate of return of approximately 18.6% and a tangible book value earn back period of approximately 1.3 years.

Upon completion of the transaction, the combined company is expected to have approximately $2.5 billion in assets, $1.7 billion in loans and $2.1 billion in deposits. With its combined lending teams, business development officers, and branch network in south central Pennsylvania and Maryland, the combined organization will be better positioned to serve the businesses and consumers in its marketplaces.

The transaction is expected to close in the second quarter of 2019. Following the closing, one of Hamilton's current directors, to be mutually agreed upon, will be added to the boards of directors of Orrstown and Orrstown Bank. In addition, Ellen R. Fish, Executive Vice President of Hamilton, will join Orrstown as Executive Vice President and Senior Lender for the Greater Baltimore region.

"We are thrilled to welcome Hamilton Bank to the Orrstown family," said Thomas R. Quinn, Jr., President and CEO of Orrstown. "By joining Hamilton and Orrstown together, our institutions, shareholders, and customers will benefit greatly from our expanded footprint, enhanced products and services, and robust technology offerings. As Orrstown marks its 100th anniversary in 2019, we will continue to remain true to our community banking roots in all of the markets we serve. This merger affords us an immediate presence in one of the most populous regions in the country, and in a market that is strategically situated for Orrstown's future growth. I would like to personally thank Bob DeAlmeida and his team for their leadership throughout this process and for their continued support during the upcoming transition."

Bob DeAlmeida, President and CEO of Hamilton, added, "I am proud of the Hamilton team and the many years of service to our customers. We built and grew a great bank. Today, I am excited to announce the partnership with Orrstown that

will allow us to better serve our customers through expanded products and services. This merger will result in a stronger competitive bank in the Baltimore area which is focused on providing a great customer experience. Our goal, through the combination of Hamilton and Orrstown, is to build an incredibly strong community bank which has the size and resources to meet the needs of our customers today and well into the future."

**Insiders' Interests in the Proposed Transaction**

38.    Hamilton and Orrstown insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and Hamilton's public stockholders.

39.    Notably, certain Company insiders have secured positions for themselves with the combined company.  One current member of the Board will be appointed to the board of directors of Orrstown and Orrstown Bank.  Additionally, Ellen R. Fish ("Fish"), Executive Vice President of Hamilton, will join Orrstown as Executive Vice President and Senior Lender for the Baltimore region of Orrstown Bank.  Registration Statement at 54.  Moreover, Orrstown will establish a Baltimore Regional Advisory Board and add the current Hamilton directors that are not chosen to join the Orrstown board of directors. *Id*. at 39.  Furthermore, it appears that other Hamilton insiders may have secured employment for themselves upon consummation of the Proposed Transaction.  According to the Registration Statement, "[p]rior to and from time to time since the execution of the merger agreement, Orrstown Financial Services has engaged, and it expects to continue to engage, in discussions with certain executive officers of Hamilton Bancorp about potential roles with the combined company after the consummation of the merger." *Id.* at 57.

40.    Further, Company insiders stand to reap substantial financial benefits for securing the deal with Orrstown.  According to the Merger Agreement, all vested and unvested Company

12

stock options will be converted into the right to receive cash payments and all outstanding unvested shares of restricted stock will be converted into the right to receive the Merger Consideration.   The following table sets forth the number of equity awards held by the Company's directors and executive officers:

| Name | Number of Shares Underlying Vested Stock Options (#) | Number of Shares Underlying Unvested Stock Options (#) | Number of Unvested Restricted Shares (#) |
|---|---|---|---|
| William E. Ballard | 7,600 | 1,900 | 900 |
| Joseph J. Bouffard | 1,900 | 7,600 | 600 |
| Carol L. Coughlin | 7,600 | 1,900 | 1,060 |
| Robert A. DeAlmeida | 59,200 | 18,997 | 6,815 |
| James R. Farnum, Jr. | 7,600 | 1,900 | 150 |
| Ellen R. Fish | 14,800 | 7,057 | 3,602 |
| William W. Furr | 7,600 | 1,900 | 900 |
| Bobbi R. Macdonald | 7,600 | 1,900 | 900 |
| John P. Marzullo | 14,800 | 7,057 | 2,652 |
| Jenny G. Morgan | 1,900 | 7,600 | 600 |

41.    Moreover, Hamilton's named executive officers stand to receive substantial cash severance payments as set forth in the following table:

| Name | Cash[1] ($) | Equity[2] ($) | Perquisites/ Benefits[3] ($) | Other[4] ($) | Total ($) |
|---|---|---|---|---|---|
| Robert A. DeAlmeida | 987,171 | 262,841 | 72,902 | 52,100 | 1,375,014 |
| John P. Marzullo | 276,662 | 86,134 | 41,527 | 19,120 | 423,443 |
| Ellen R. Fish | 537,814 | 97,554 | 6,999 | 16,934 | 659,301 |

**The Registration Statement Contains Material Misstatements and Omissions**

42.    The defendants filed a materially incomplete and misleading Registration Statement with the SEC and disseminated it to Hamilton's stockholders.   The Registration Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote their shares in favor of the Proposed Transaction.

43.    Specifically, as set forth below, the Registration Statement fails to provide Company stockholders with material information or provides them with materially misleading

13

information concerning: (i) Hamilton and Orrstown management's financial projections, including financial projections that were relied upon by the Company's financial advisor, KBW, in its financial analyses, all of which are ***wholly omitted*** from the Registration Statement; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by KBW; (iii) the background process leading to the Proposed Transaction; and (iv) Company insiders' potential conflicts of interest. Accordingly, Hamilton stockholders are being asked to make a voting decision in connection with the Proposed Transaction without all material information at their disposal.

***Material Omissions Concerning Hamilton and Orrstown Management's Financial Projections***

44.     The Registration Statement is materially deficient because it fails to disclose material information relating to Hamilton and Orrstown management's best estimates of the Company's and Orrstown's respective intrinsic value and prospects going forward, as well as estimates regarding the pro forma financial effects of the merger on Orrstown.

45.     The Registration Statement fails to disclose ***any*** of Hamilton or Orrstown management's financial projections that were provided to and relied upon by the Company's financial advisor KBW in connection with its financial analyses.

46.     For example, the Registration Statement sets forth:

KBW's consideration of financial information and other factors that it deemed appropriate under the circumstances or relevant to its analyses included, among others, the following:

* * *

- financial and operating forecasts and projections of Hamilton Bancorp that were prepared by, and provided to KBW and discussed with KBW by, Hamilton Bancorp management and that were used and relied upon by KBW at the direction of such management and with the consent of the Hamilton Bancorp board;

14

- financial and operating forecasts and projections of Orrstown Financial Services that were prepared by, and provided to KBW and discussed with KBW by, Orrstown Financial Services management and used and relied upon by KBW based on such discussions, at the direction of Hamilton Bancorp management and with the consent of the Hamilton Bancorp board

* * *

- estimates regarding certain pro forma financial effects of the merger on Orrstown Financial Services (including, without limitation, the cost savings and related expenses expected to result or be derived from the merger) that were prepared by, and provided to and discussed with KBW by, the management of Orrstown Financial Services, and used and relied upon by KBW based on such discussions, at the direction of Hamilton Bancorp management and with the consent of the Hamilton Bancorp board.

*Id.*at 41-42.

47.     Yet, the Registration Statement **wholly omits** the financial and operating forecasts and projections of Hamilton and Orrstown, prepared by the respective companies' management, as well as Orrstown management's estimates regarding certain pro forma financial effects of the merger on Orrstown – each of which were used and relied upon by KBW at the direction of Hamilton management and with the consent of the Board.

48.     Without this information, Hamilton stockholders are unable to evaluate the Merger Consideration, Hamilton's financial future as a standalone entity, the accuracy of KBW's financial analyses, or make an informed decision whether the Proposed Transaction maximizes stockholder value and serves their interests.

49.     The omission of this information renders the statements in the "Opinion of Hamilton Bancorp's Financial Advisor" section of the Registration Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning KBW's Financial Analyses***

50.     The Registration Statement describes KBW's fairness opinion and the various valuation analyses performed in support of its opinion.  However, the description of KBW's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses.  Without this information, as described below, Hamilton's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on KBW's fairness opinion in determining whether to vote in favor of the Proposed Transaction.  This omitted information, if disclosed, would significantly alter the total mix of information available to Hamilton's stockholders.

51.     With respect to KBW's *Hamilton Bancorp Discounted Cash Flow Analysis*, the Registration Statement fails to disclose: (i) estimated excess cash flows that Hamilton could generate over the period from June 30, 2019 through December 31, 2023 as a stand-alone company; (ii) the definition of how the excess cash flows were calculated; (iii) Hamilton's estimated 2024 net income; (iv) Hamilton's estimated tangible book value as of December 31, 2023; (v) quantification of the inputs and assumptions underlying the discount rate range of 13.0% to 17.0%; and (vi) the perpetuity growth rates for Hamilton implied by the analysis.

52.     With respect to KBW's *Orrstown Financial Services Discounted Cash Flow Analysis*, the Registration Statement fails to disclose: (i) estimated excess cash flows that Orrstown could generate over the period from June 30, 2019 through December 31, 2023 as a stand-alone company; (ii) the definition of how the excess cash flows were calculated; (iii) Orrstown's estimated 2024 net income; (iv) quantification of the inputs and assumptions underlying the discount rate range of 11.0% to 15.0%; and (v) the perpetuity growth rates for Orrstown implied by the analysis.

53.     With respect to KBW's *Hamilton Bancorp Selected Companies Analysis*, *Orrstown Financial Services Selected Companies Analysis* and *Selected Transactions Analysis*, the Registration Statement fails to disclose the individual multiples and financial metrics for each of the selected companies and transactions analyzed by KBW in the analyses as well as Hamilton's and Orrstown's 2018 and 2019 earnings per share ("EPS") estimates utilized by KBW in the selected companies analyses.

54.     With respect to KBW's *Forecasted Pro Forma Financial Impact Analysis*, the Proxy Statement fails to disclose: (i) the growth rates for Orrstown and Hamilton provided by Orrstown; (ii) the financial and operating forecasts and projections of Orrstown and Hamilton provided by Orrstown; (iii) the pro forma assumptions provided by Orrstown, including, among other things, the cost savings and related expenses expected to result from the merger and certain accounting adjustments and restructuring charges assumed with respect thereto; and (iv) the specific EPS and tangible book value per share accretion and dilution figures resulting from the analysis.

55.     When a banker's endorsement of the fairness of a transaction is touted to stockholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

56.     The omission of this information renders the statements in the "Opinion of Hamilton Bancorp's Financial Advisor" section of the Registration Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning the Background Process of the Proposed Transaction***

57.     The Registration Statement omits material information relating to the sale process leading up to the Proposed Transaction.

17

58.     In connection with the sale process, the Registration Statement sets forth:

Beginning in May 2018, KBW contacted the 11 potential merger partners approved by the Hamilton Bancorp board of directors and a virtual data room containing the Confidential Memorandum and additional information about Hamilton Bancorp was opened at such time to those parties who entered into a non-disclosure agreement and expressed an interest in receiving additional information regarding a transaction with Hamilton Bancorp. . . .

In addition to the 11 parties solicited by KBW . . . the Hamilton Bancorp board approved KBW providing [an additional] party with a non-disclosure agreement and providing it with access to the virtual data room.

* * *

Of the 12 institutions which had been contacted by, or which had contacted, KBW, eight requested the Confidential Memorandum and were granted access to the virtual data room . . .

*Id*.at 34.   The Registration Statement fails, however, to expressly indicate whether the NDAs Hamilton entered into with each of the eight institutions that requested the Confidential Memorandum are still in effect and/or contain DADW standstill provisions that are presently precluding these parties from making a topping bid for the Company.

59.     The disclosure of the existence and terms of any NDAs Hamilton entered into with any other party is crucial to Hamilton stockholders being fully informed of whether their fiduciaries have put in place restrictive devices to foreclose a topping bid for the Company.

60.     The omission of this information renders the statements in the "Background of the Merger" section of the Registration Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Potential Conflicts of Interest of Company Insiders***

61.     The Registration Statement fails to disclose material information concerning potential conflicts of interest faced by the Hamilton insiders.

62.     For example, according to the Registration Statement, "[p]rior to and from time to time since the execution of the merger agreement, Orrstown Financial Services has engaged, and it expects to continue to engage, in discussions with certain executive officers of Hamilton Bancorp about potential roles with the combined company after consummation of the merger." *Id.* at 57.  Indeed, at its October 23, 2018 Board meeting, the Board "reviewed and discussed the employment agreement by and among Ellen Fish, Hamilton Bancorp's Executive Vice President, under which Ms. Fish will join Orrstown Bank as Executive Vice President and Senior Lender effective upon consummation of the merger agreement."  *Id.* at 36-37.  The Registration Statement further sets forth that, "following the effective time of the merger, one director of Hamilton Bancorp (as mutually agreed by Orrstown Financial Services and Hamilton Bancorp) will be appointed to the board of directors of each of Orrstown Financial Services and Orrstown Bank."  *Id.* at 57.  Additionally, Orrstown will establish a Baltimore Regional Advisory Board and add the current Hamilton directors that are not chosen to join the Orrstown board of directors.  *Id.* at 39.

63.     However, the Registration Statement fails to disclose whether any other Hamilton executives, in addition to Fish, have secured positions with the combined company as well as the details of all employment-related discussions and negotiations that occurred between Orrstown and Hamilton executive officers and directors, including who participated in all such communications, when they occurred and their content.  The Registration Statement further fails to disclose whether any of Orrstown's prior proposals or indications of interest mentioned management retention or board membership in the combined company.

64.     Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders.  This information is necessary for

stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

65.     The omission of this information renders the statements in the "Background of the Merger" and "Interests of Hamilton Bancorp Directors and Executive Officers in the Merger" sections of the Registration Statement false and/or materially misleading in contravention of the Exchange Act.

66.     The Individual Defendants were aware of their duty to disclose this information and acted negligently (if not deliberately) in failing to include this information in the Registration Statement.  Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed voting decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

**Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act And SEC Rule 14a-9 Promulgated Thereunder**

67.     Plaintiff repeats all previous allegations as if set forth in full.

68.     During the relevant period, defendants disseminated the false and misleading Registration Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

69.     By virtue of their positions within the Company, the defendants were aware of

this information and of their duty to disclose this information in the Registration Statement.  The Registration Statement was prepared, reviewed, and/or disseminated by the defendants.  The Registration Statement misrepresented and/or omitted material facts, including material information about the actual intrinsic standalone value of each of the Company and Orrstown, the valuation analyses prepared by KBW in connection with the rendering of its fairness opinion, the background process leading to the Proposed Transaction; and Hamilton insiders' potential conflicts of interest.  The defendants were at least negligent in filing the Registration Statement with these materially false and misleading statements.

70.     The omissions and false and misleading statements in the Registration Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.  In addition, a reasonable investor would view a full and accurate disclosure as significantly altering the "total mix" of information made available in the Registration Statement and in other information reasonably available to stockholders.

71.     By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

72.     Because of the false and misleading statements in the Registration Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate.  Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Claims Against the Individual Defendants for
### Violations of Section 20(a) of the Exchange Act

73.     Plaintiff repeats all previous allegations as if set forth in full.

74.     The Individual Defendants acted as controlling persons of Hamilton within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as

officers or directors of Hamilton and participation in or awareness of the Company's operations or intimate knowledge of the statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

75.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

76.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.   The Registration Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of this document.

77.     In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.  The Registration Statement purports to describe the various issues and information that they reviewed and considered — descriptions which had input from the Individual Defendants.

78.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

79.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that defendants' actions threaten to inflict.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Hamilton, and against defendants, as follows:

A.      Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Hamilton stockholders;

B.      In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

D.      Granting such other and further relief as this Court may deem just and proper.

### JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: March 5, 2019

**LEVI & KORSINSKY LLP**

*/s/ Donald J. Enright*

Donald J. Enright (Bar No. 13551)
1101 30th Street, N.W., Suite 115
Washington, DC 20007
T: (202) 524-4290
F: (202) 333-2121
Email: denright@zlk.com

*Attorneys for Plaintiff*

**OF COUNSEL:**

**WEISSLAW LLP**
Richard A. Acocelli
Michael A. Rogovin
Kelly K. Moran
1500 Broadway, 16th Floor
New York, New York 10036
Tel: (212) 682-3025
Fax: (212) 682-3010

*Attorneys for Plaintiff*